COURT OF APPEALS OF VIRGINIA

Present:    Judges AtLee, Athey and Bernhard
Argued by videoconference


MATTHEW CHRISTOPHER MCNEIL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0149-25-3                       JUDGE RICHARD Y. ATLEE, JR.
                                                          MARCH 3, 2026
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                                    John T. Cook, Judge

            Edward F. Lavado (M. Pack Law, PLLC, on brief), for appellant.

            Sandra M. Workman, Assistant Attorney General (Jason S. Miyares,[1]
            Attorney General, on brief), for appellee.


        Following a jury trial, the trial court convicted Matthew Christopher McNeil of first-degree

murder and use of a firearm in the commission of murder.  On appeal, McNeil argues that the trial

court abused its discretion by refusing his proposed jury instruction on voluntary intoxication.  For

the following reasons, we disagree and affirm the decision of the trial court.

                                    I. BACKGROUND

        "[W]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction."  *Lienau v.

Commonwealth*, 69 Va. App. 254, 260 (2018) (quoting *Commonwealth v. Vaughn*, 263 Va. 31,

33 (2002)).

_____
        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

On July 26, 2022, McNeil went to David Little's home to confront him about his suspicions that Little was romantically involved with McNeil's girlfriend, Tonya Brazwell. McNeil took with him a sawed-off shotgun, which he carried in his backpack. McNeil had already visited Little's home earlier that day, but McNeil had left, stopped by a nearby gas station, and then walked back to Little's home. McNeil observed Little leaving his home, so McNeil waited in the woods near the home for Little to return. When Little returned, McNeil walked up to the back door and Little invited McNeil inside. McNeil then confronted Little about his involvement with Brazwell, and the two began to argue. During the argument, McNeil pulled the shotgun from his backpack and shot Little in the chest.

McNeil checked on Little, and Little was not breathing. McNeil then left the scene in Little's car. Little's body was discovered the next day by his landlord, Ronnie Hall, after Little's daughter became worried and asked Hall to check on Little. Hall called 911 upon discovering Little's body. An autopsy later confirmed that Little died from the gunshot wound to his chest.

Police began to look for McNeil after Little's mother identified him as a person possibly involved in the killing. The investigation led the officers to the home of Timothy Howerton on July 27. There, they found Little's car "in the backyard and . . . covered with sheet metal, [which] appeared to be an attempt to conceal it." Howerton and his wife consented to a search of their residence. In the basement, Captain Cory Angel of the Campbell County Sheriff's Department observed what appeared to be a pair of denim jeans protruding from underneath a tarp. Officers removed the tarp and discovered McNeil hiding beneath it.

Angel detained McNeil and took him to an investigations building where McNeil gave his first of three statements. Angel first asked McNeil about Little's car and how he had possession of it. McNeil stated that he had gone to Little's home the prior day, July 26, to get a bill of sale and a title for a vehicle from Little's brother. McNeil stayed at Little's home "for a short period of time"

- 2 -

and had one alcoholic drink. McNeil claimed that after he left, he spoke to Little's mother at her home, trying to find Little's brother "to get this car situation worked out." Then, McNeil claimed he left and stopped at a gas station before going to Howerton's home. In his first statement, McNeil told Angel that Little "was perfectly fine" when McNeil departed. McNeil said he had not harmed Little during his visit.

Officers subsequently obtained a warrant to search Howerton's home and discovered the shotgun that had been used to kill Little. Officers also found methamphetamine in a bedroom where McNeil occasionally stayed.

The police interviewed McNeil for the second time on July 28. During this second interview, McNeil admitted to Angel that he had returned to Little's home after his initial visit to confront Little about his involvement with Brazwell and that he fired the shotgun during their argument. When confronted about the methamphetamine that officers found in Howerton's home, McNeil stated, "That ain't my room." Angel told McNeil that Howerton claimed to have smoked methamphetamine with McNeil on the night of the shooting, and McNeil responded, "I don't smoke it," and denied staying at Howerton's residence that night. Several days after McNeil's second statement, he requested to speak to Angel again. During this third statement, McNeil admitted to using methamphetamine the night of the shooting.

A grand jury subsequently indicted McNeil on one count of first-degree murder and one count of using a firearm in the commission of murder.[2] At trial, McNeil proffered a jury instruction on voluntary intoxication to refute premeditation. The proposed instruction stated:

> If you find that the defendant was so greatly intoxicated by the voluntary use of alcohol, drugs or a combination of alcohol and drugs that he was incapable of deliberating or premeditating, then you cannot find him guilty of murder in the first degree.

---

[2] The grand jury also indicted McNeil on one count of larceny of an automobile and one count of possession of a firearm as a violent felon, and the trial court subsequently convicted him of both offenses. McNeil does not challenge either of these convictions.

> Voluntary intoxication is not a defense to second degree
> murder or manslaughter.

McNeil argued that the instruction was appropriate because he used methamphetamine and drank alcohol on the day of the shooting. The trial court refused the instruction, finding that there was insufficient evidence in the record to support it and that the instruction would require the jury to speculate about intoxication. The jury found McNeil guilty of first-degree murder and use of a firearm in the commission of murder. McNeil now appeals.

## II. ANALYSIS

McNeil argues that the trial court erred by refusing his proffered jury instruction on voluntary intoxication. Specifically, McNeil contends that the instruction was sufficiently supported by the evidence. We disagree.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "This Court reviews the trial court's decisions in giving or denying jury instructions under an abuse of discretion standard." *Id.*

It is undisputed that the proffered instruction is a correct statement of law. And where a proffered jury instruction is an otherwise correct statement of law, such instruction "is proper only if supported by more than a scintilla of evidence." *Commonwealth v. Cary*, 271 Va. 87, 100 (2006) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). Conversely, "[a]n instruction is properly refused when it is unsupported by the evidence." *Bennett v. Commonwealth*, 8 Va. App. 228, 234 (1989).

It is well-settled that a defendant's voluntary intoxication may negate the premeditation required for first-degree murder. *Tisdale v. Commonwealth*, 65 Va. App. 478, 482 (2015). "To justify an instruction on voluntary [intoxication], the evidence must show more than the mere

- 4 -

drinking of alcohol" or consumption of drugs. *Hatcher v. Commonwealth*, 218 Va. 811, 814 (1978); *see also Jenkins v. Commonwealth*, 244 Va. 445, 458 (1992). Instead, the record must demonstrate that the defendant "was so intoxicated as to render him incapable of committing a wil[l]ful, deliberate and premeditated act designed to kill." *Jenkins*, 244 Va. at 458 (quoting *Hatcher*, 218 Va. at 814). But if the record demonstrates that the defendant "retain[ed] the faculty of willing, deliberating and premeditating, though drunk, he is capable of committing murder in the first degree" and he is not entitled an instruction on voluntary intoxication. *Hatcher*, 218 Va. at 814 (quoting *Johnson v. Commonwealth*, 135 Va. 524, 531 (1923)).

Here, the record does not establish that McNeil was entitled to a voluntary intoxication instruction. McNeil consumed one alcoholic beverage prior to the shooting and used methamphetamine at some point that evening.[3] The record does not indicate how much methamphetamine McNeil used. It is not even clear from the record whether McNeil used the drug before or after the shooting. There is no evidence as to whether or to what degree the substances affected him. In fact, there is no evidence of how either of the substances affected him at all. When McNeil admitted to law enforcement that he had used methamphetamine that night, he "did not claim he was so intoxicated that he was unaware of the events causing [Little's] death." *Id.* In other words, there is no evidence to establish that McNeil "was intoxicated to such extent that he did not know what he was doing or did not know right from wrong." *Duncan v. Commonwealth*, 2 Va. App. 717, 731 (1986).

Instead, the evidence demonstrates that McNeil went to Little's home and waited in the woods for Little to return. *See Giarratano v. Commonwealth*, 220 Va. 1064, 1073 (1980) (reasoning that a defendant's conduct "belie[d] his claim of mental incapacity induced by drugs and

---

[3] McNeil concedes that the consumption of the alcoholic beverage alone is insufficient to justify the instruction, but he argues that the instruction was justified based on the combination of his alcohol consumption and methamphetamine use.

alcohol" where that defendant cased the victim's home and returned several hours later when the victim returned). McNeil was able to operate Little's vehicle after the shooting and "took steps to deliberately conceal his involvement in the murder" by attempting to hide that vehicle at Howerton's home. *Lilly v. Commonwealth*, 255 Va. 558, 579 (1998), *rev'd on other grounds*, 527 U.S. 116 (1999). McNeil's conduct "at the time the offense was committed and immediately thereafter show[s] that, even though [he] had been drinking" and had taken drugs, "he was aware of his actions and was not too intoxicated to form the intent requisite for murder in the first degree." *Hatcher*, 218 Va. at 814. Accordingly, the trial court did not err in refusing McNeil's proffered instruction on voluntary intoxication.

## III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*